UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CAUSE NO.:  1:15-CR-2-3-TLS-SLC |
| | 1:19-CV-523-TLS |
| LARRY J. NORTON | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Larry J. Norton's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 [ECF No. 399] and his Motion for Return of Property [ECF No. 401]. Based on the Defendant's filings, the Court concludes that he is able to represent his interests and denies his request for appointed counsel. Because the Defendant's arguments are without merit, his Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 [ECF No. 399] is dismissed and his Motion for Return of Property [ECF No. 401] is denied.

**BACKGROUND**

In July 2014, the Federal Bureau of Investigation (FBI) recruited an informant who provided information on the inner circle of a drug trafficking operation led by Allan Bates. May 26, 2016 Op. & Order 1, ECF No. 144. Through their investigation, the FBI identified the Defendant, Larry Norton, as member of the conspiracy, who was responsible for counting money and distributing controlled substances. *Id.* Investigators believed that on November 7, 2014, the Defendant would be transporting drug proceeds. *Id.* They conducted surveillance, initiated a traffic stop, and obtained a search warrant for his vehicle. *Id.* Their search revealed hidden compartments containing more than $400,000. *Id.*

The Indictment [ECF No. 1] was filed with the Court on January 28, 2015, charging the Defendant with knowingly and intentionally conspiring, combining, confederating, and agreeing

with other persons to distribute and possess with the intent to distribute controlled substances, including one kilogram or more of a mixture and substance containing a detectable amount of heroin, five kilograms or more of a mixture and substance containing a detectable amount of cocaine, and marijuana, in violation of 21 U.S.C. § 846. Indictment, ECF No. 1. On June 24, 2015, the Defendant filed a Motion to Suppress [ECF No. 75] that sought to suppress all evidence collected in connection with the November 7, 2014 traffic stop. The Court denied the Defendant's Motion to Suppress, concluding that there was probable cause to believe that the Defendant committed a traffic violation, thus justifying the traffic stop, and that the stop was otherwise justified due to the reasonable suspicion of criminal activity at the time of the stop. See May 26, 2016 Op. & Order 6, 9, ECF No. 144; Apr. 28, 2016 R. & R. 14, 18, ECF No. 135.

On May 31, 2017, the jury returned a verdict of guilty after a six-day trial, *see* ECF Nos. 242–47, and the Court denied the Defendant's Motion for a Directed Verdict, *see id.* at 247. The Court then sentenced the Defendant to a term of life imprisonment. *See id.* at 287. The Defendant filed an appeal, *see id.* at 289, and the Seventh Circuit affirmed the Court's decision, *see id.* at 343. The Defendant then petitioned the Supreme Court for a writ of certiorari, but his petition was denied on December 3, 2018. *Norton v. United States*, 139 S. Ct. 610 (Mem) (2018). He then filed the pending § 2255 Motion [ECF No. 399] and the Motion for Return of Property [ECF No. 401].

## ANALYSIS

A.     **Section 2255 Motion**

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, district courts must conduct a preliminary review of § 2255 motions. The Rule states, in relevant part, that "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rule 4(b)

of Rules Governing Section 2255 Proceedings. The Defendant's § 2255 Motion is untimely and does not present a meritorious argument for relief; therefore, the § 2255 Motion is dismissed.

1. *The Defendant Has Failed to Demonstrate that His Motion Is Timely*

The Defendant's Motion is untimely on its face and, therefore, does not withstand Rule 4(b) review.

Section 2255(f) provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). The Defendant's § 2255 Motion does not allege that government action impeded him from making a motion, that the Supreme Court has recognized a new right and made that right retroactively applicable to cases on collateral review, or that new facts supporting his claim were discovered. Therefore, the 1-year period of limitation shall run from the date his judgment of conviction became final.

If a defendant unsuccessfully petitions the Supreme Court for a writ of certiorari, the conviction becomes final on the day the Supreme Court denies the petition. *See Robinson v. United States*, 416 F.3d 645, 650 (7th Cir. 2005). Therefore, the Defendant's conviction became final on December 3, 2018. *Norton*, 139 S. Ct. 610 (Mem). Accordingly, the Defendant, as a

prisoner acting without an attorney, had until December 3, 2019, *see United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) ("The first day of the 1-year limitation period is the day after the Supreme Court denies certiorari, giving defendants until the close of business on the anniversary date of the certiorari denial to file their habeas motion."), to deliver his § 2255 Motion to the prison authorities to be forwarded to the clerk of this Court, *see Jones v. Bertrand*, 171 F.3d 499, 501 (7th Cir. 1999) ("Therefore, for the purposes of a prisoner filing a *pro se* notice of appeal, the Supreme Court adopted a bright line test and held that it is timely filed for statute of limitations purposes so long as it is delivered to the prison authorities before the 30-day statute of limitations has expired and not when it is actually received by the clerk." (citing *Houston v. Lack*, 487 U.S. 266, 275–76 (1988))).[1] The Defendant did not date his filings, and nothing has been provided to the Court indicating that he timely delivered his § 2255 Motion. Accordingly, the Defendant has not provided the Court sufficient information to invoke the mailbox rule. The Seventh Circuit has occasionally required district courts to engage in fact finding to determine if a defendant's motion was timely filed according to the mailbox rule. *See May v. Mahone*, 876 F.3d 896, 899 (7th Cir. 2017). In this instance, the Court need not inquire further into whether the Defendant's § 2255 Motion was timely because it must be dismissed on the merits.

2.  *The Defendant's Motion Fails on the Merits*

The Defendant's § 2255 Motion presents six grounds for relief, five of which argue that he received ineffective assistance of counsel. It is well established that a defendant claiming ineffective assistance of counsel must show that his "'counsel's performance was deficient' and 'the deficient performance prejudiced the defense.'" *Bridges v. United States*, 991 F.3d 793, 803

---

[1] The Defendant's § 2255 Motion was filed with the Court on December 9, 2019; therefore, it would be untimely but for the mailbox rule.

4

(7th Cir. 2021) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). That is, the defendant must show "(1) that his trial attorney's performance fell below an objective standard of reasonableness, and (2) that he suffered prejudice as a result." *Edmond v. United States*, 899 F.3d 446, 452 (7th Cir. 2018) (citing *Strickland*, 466 U.S. at 687–96). To show that an attorney's performance fell below an objective standard of reasonableness, the defendant must "specifically identify acts or omissions that form the basis of his claim of ineffective assistance." *United States v. Redd*, No. 1:03-CR-53, 2007 WL 1724900, at *7 (N.D. Ind. June 11, 2007) (citing *Strickland*, 466 U.S. at 690). Further, a defendant attempting to establish that he has been prejudiced "must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bridges*, 991 F.3d at 808 (quoting *Strickland*, 466 U.S. at 694)). Indeed, "[b]ald allegations of prejudice are insufficient to demonstrate ineffective assistance of counsel." *Redd*, 2007 WL 1724900, at *8 (citing *Barkauskas v. Lane*, 946 F.2d 1292, 1295 (7th Cir. 1991)). If a defendant cannot establish one of the *Strickland* prongs, the Court need not consider the other. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

  The Defendant has alleged five instances in which he received inadequate representation: ineffective assistance of counsel during the pretrial process regarding discrepancies in the search warrant and the report of traffic stop (Ground One), ineffective assistance of counsel during the pretrial process regarding the federal rules of evidence (Ground Two), ineffective assistance of counsel during trial for failure to call a particular witness (Ground Three), ineffective assistance of counsel during trial for failure to advise the Defendant on his right to testify (Ground Four), and ineffective counsel based on the cumulative impact of multiple deficiencies or errors by counsel at all levels (pretrial, plea, trial, sentencing, and appeals) of the criminal process (Ground Five). § 2255 Mot. pp. 3–9. The Defendant also makes a catch-all argument that his sentence

5

violates the First, Second, Fourth, Fifth, Sixth, and Eight Amendments to the Constitution (Ground Six). *Id.* at p 10. The Court will address each ground in turn.

    a.    Failure to Address Discrepancies Regarding the Search Warrant and Traffic Stop Report

The Defendant's first claim is that he was provided ineffective assistance of counsel during the pretrial process, when counsel failed to properly argue the discrepancies between the November 7, 2014 search warrant affidavit and the police report of the stop. The discrepancies identified by the Defendant are that (1) "the **affidavit** supporting the 11-7-14 search warrant based on the alleged circumstances of the 11-7-14 traffic stop was actually filed with the court on 11-6-14 and was post-dated 11-7-14"; (2) "the affidavit says that the police stopped [the Defendant] 'at 329 mile marker' whereas the police report says that he was stopped at the '333 mile marker'"; (3) "with the smell of burnt marijuana throughout [the Defendant's] pickup truck, the drug dog's 'sniff' was irrelevant and, in any event, was a false positive because the dog was trained to indicate drugs and there were no drugs what-so-ever in the vehicle; only money"; (4) "the affidavit did NOT list the speed whereas the police report said it was 72 mph"; and (5) "the original 'reason' for the traffic stop, 'speeding,' was never pursued in any way and he was not given a speeding ticket." § 2255 Mot. ¶¶ 23–26B, ECF No. 399. For the reasons set forth in the following sections, defense counsel's alleged failure to argue the cited discrepancies does not warrant § 2255 relief.

    i.    Search Warrant Date

First, the Defendant argues that he was prejudiced by his attorney's failure to "point out that the **affidavit** supporting the 11-7-14 search warrant based on the alleged circumstances of the 11-7-14 traffic stop was actually filed with the court on 11-6-14 and was post-dated 11-7-

6

14." § 2255 Mot. ¶ 23. The Defendant does not specify why he believes the Sworn Application was postdated; however, it seems that the Defendant holds this belief because the Sworn Application was marked with a stamp that reads "FILED NOV 06 2014." *See* Norton Ex. F2 at 79, ECF No. 403. However, the Sworn Application contains no other reference to November 6, 2014, is dated November 7, 2014, and references the events that occurred during the November 7, 2014 traffic stop. *Id.* The Search Warrant was marked with a stamp that reads "FILED NOV 7 2014" and was dated November 7, 2014. Norton Ex. F1, ECF No. 403 at 78.

      Foremost, the fact that the Sworn Application was marked with a November 6, 2017 date stamp, does not demonstrate, as the Defendant asserts, that the Sworn Application was postdated. The Sworn Application contains particularized details about the November 7, 2014 traffic stop, which confirms that it was prepared after the traffic stop occurred. Additionally, the incorrect date does not invalidate the search warrant. *See United States v. Smith*, 720 F.3d 1017, 1020 (8th Cir. 2013) ("Analyzing the facts of this case, we hold that the incorrect date is a 'technicality issue' . . . that does not invalidate the search warrant."); *United States v. Norris*, 640 F.3d 295, 302 (7th Cir. 2011) ("[M]inor clerical errors generally are not fatal to a search warrant." (quoting *United States v. Waker*, 534 F.3d 168, 172 (2d Cir. 2008))); *United States v. Souffront*, 338 F.3d 809, 822 (7th Cir. 2003) ("The district court correctly concluded that this singular occurrence of 1994 was merely a typographical error. A technical contradiction does not reveal a disregard of the truth." (citing *United States v. Maro*, 272 F.3d 817, 822 (7th Cir. 2001))); *United States v. Upton*, No. CRIM. 05-30115, 2006 WL 740935, at *5 (S.D. Ill. Mar. 23, 2006) ("The Court has previously determined that the date discrepancy was simply a typographical error . . . . The Court FINDS that the defendant has not established that the search warrant was merely a 'rubber stamp' by the state judge, and accordingly DENIES defendant's motion to suppress evidence seized on all grounds.").

The Defendant's contention that his attorney did not present this argument appears to be correct. However, even if the Defendant's attorney had presented this argument, it would not have changed the result of any aspect of the criminal proceeding. Accordingly, the Defendant has not demonstrated that he was prejudiced by his attorney's failure to advance this argument concerning the search warrant date, and his § 2255 Motion is dismissed regarding this argument.

  ii.  Mile Marker

Second, the Defendant argues that he was prejudiced by his attorney's failure to "point out that the affidavit says that the police stopped [the Defendant] 'at 329 mile marker' whereas the police report says that he was stopped at the '333 mile marker.'" § 2255 Mot. ¶ 24. The Police Report indicates that the Defendant's vehicle "was found to be traveling at 72 mph in a posted 55 mph Construction Zone at the 329 Mile Marker," and that the officer "initiated a traffic stop on the vehicle at the end of the construction zone (333 Mile Marker) . . . ." Norton Ex. G1, ECF No. 403 at 81. The Sworn Application indicates that the officer "stopped a vehicle for speeding on Interstate 69 at 329 mile marker." Norton Ex. F2, ECF No. 403 at 79.

Although not clearly articulated, the Defendant's claim is that his attorney should have argued that the above described "inconsistency" renders the Search Warrant invalid. However, this "inconsistency" exists solely because of the Defendant's misinterpretation of the Sworn Application. The Defendant interprets the Sworn Application to indicate that the officer stopped a vehicle at the 329-mile marker for speeding on Interstate 69. However, the Sworn Application instead indicates that the Defendant was observed "speeding on Interstate 69 at the 329 mile marker" but does not specify where the Defendant's vehicle was stopped. *See* Norton Ex. F2, ECF No. 403 at 79. Accordingly, the Court finds no meaningful discrepancy between the documents.

8

Again, the Defendant's contention that his attorney did not present this argument appears to be correct. However, even if the Defendant's attorney had presented this argument, it would not have changed the result of any aspect of the criminal proceeding. Accordingly, the Defendant has not demonstrated that he was prejudiced by his attorney's failure to advance this argument concerning the mile marker at which the traffic stop occurred, and his § 2255 Motion is dismissed regarding this argument.

      iii.      Drug Dog Sniff

Third, the Defendant alleges that his attorney "could have but did not point out that with the smell of burnt marijuana throughout Mr. Norton's pickup truck, the dog's 'sniff' was irrelevant and, in any event was a false positive because the dog was trained to indicate drugs and there were no drugs what-so-ever in the vehicle; only money." § 2255 Mot. ¶ 25. However, the Defendant's attorney did make this argument, *see* Def.'s Br. in Supp. of Mot. to Suppress 7, ECF No. 125 ("Officer Schultz testified at length regarding the work of his K-9 partner, noting that the dog alerted the presence of drugs three different times in and around [the Defendant's] vehicle . . . . Despite the alleged alerts, no drugs were ever found on [the Defendant] or in the vehicle."), and it was rejected by the Court, *see* May 26, 2016 Op. & Order 7; Apr. 28, 2016 R. & R. 17. Accordingly, the Defendant's argument misrepresents his attorney's conduct and his § 2255 Motion is dismissed regarding this argument.

      iv.      Speed

Fourth, the Defendant alleges that his attorney "could have but did not point out that the affidavit did NOT list the speed whereas the police report said it was 72 mph." § 2255 Mot. ¶ 26A. Despite the Defendant's contentions, no discrepancy exists because the Sworn Application clearly identifies that the Defendant was speeding. Norton Ex. F2, ECF No. 403 at 79. If the Defendant's attorney had presented this argument, it would not have changed the result

9

of any aspect of the criminal proceeding. Accordingly, the Defendant has not demonstrated that he was prejudiced by his attorney's failure to advance this argument, and his § 2255 Motion is dismissed regarding this argument.

      v.      Reason for Traffic Stop

Finally, the Defendant argues that his attorney "could have but did not point out that the original 'reason' for the traffic stop, 'speeding,' was never pursued in any way and he was not given a ticket." § 2255 Mot. ¶ 26B. However, again, the Defendant misrepresents his attorney's conduct. The Defendant's attorney did argue that the fact that the Defendant did not receive a speeding ticket suggests that the traffic stop was improper. Def.'s Br. in Supp. of Mot. to Suppress 5. This argument was considered and rejected by the Court. May 26, 2016 Op. & Order 6 (adopting the magistrate judge's findings of fact and conclusion that the facts established probably cause to believe that the Defendant had committed a traffic violation); Apr. 28, 2016 R. & R. 14 ("The fact that Officer Shultz ultimately wrote a warning, rather than a speeding ticket, is inconsequential in light of the underlying covert drug investigation."). Accordingly, the Defendant's argument misrepresents his attorney's conduct, and his § 2255 Motion is dismissed regarding this argument.

      b.      Failure to Object Pursuant to the Federal Rules of Evidence

The Defendant also argues that he did not receive effective assistance of counsel "during the pretrial process" because his attorney "could have but did not argue to the District Court that the 'best evidence rule' of Fed. R. Evid. 1002 was violated when Officer Brad Schultz was allowed to testify as to the alleged speed that radar said Mr. Norton was traveling instead of presenting a radar printout of the speed." § 2255 Mot. ¶¶ 33–35.

During the Suppression Hearing, Officer Brad Shultz testified:

10

> When I was told to move into location to make a traffic stop, the undercover officers, the vehicle that had come into the construction zone in DeKalb County just south of State Road 8. Just north of State Road 8, they had a speeding violation on the vehicle at 72 in a 55 construction zone. They asked me to go ahead and move into the position to make a traffic stop. I moved into the position, confirmed that I was behind the vehicle, confirmed the license plate that they had given me, and the description. I utilized my radar and also confirmed the speed they had that they had clocked the vehicle at 72 in a 55, and then I followed the vehicle just north of the construction zone for safety purposes, and I stopped that vehicle just south on US 6, which is around the 333-mile marker.

Tr. Oct. 29, 2015 Suppression Hr'g 18:15–19:3, ECF No. 121.

There are three problems with the Defendant's argument regarding the best evidence rule. First, the Court held that the underlying drug investigation, when considered separately from the traffic violation, provided reasonable suspicion that the Defendant's vehicle would contain evidence of criminal activity. May 26, 2016 Op. & Order 6–9. As such, even if Office Shultz's testimony could not be relied upon to establish that the traffic violation created reasonable suspicion, the Court still would have denied the Defendant's Motion to Suppress.

Second, "the Rules of Evidence do not apply at pre-trial admissibility hearings." *United States v. Ozuna*, 561 F.3d 728, 736 (7th Cir. 2009). Indeed, "Rule 104(a) makes this explicit. When ruling on admissibility, a district court judge 'is not bound by the rules of evidence except those with respect to privileges.'" *Id.* (quoting Fed. R. Evid. 104(a)); *see also United States v. Marzook*, 435 F. Supp. 2d 708, 747 (N.D. Ill. 2006) ("[T]he Federal Rules of Evidence expressly recognize that at suppression hearings—which deal only with the admissibility of evidence—a court is not bound by the Federal Rules of Evidence." (citing Fed. R. Evid. 104(a))).[2] As such,

---

[2] The Court notes that the Defendant submitted a supplement in support of his § 2255 motion arguing that, in *United States v. Hamidullin*, 114 F. Supp. 3d 388 (E.D. Va. 2015), *United States v. Beeler*, 62 F. Supp. 2d 136 (D. Me. 1999), and *United States v. Codrington*, No. 07-MJ-118, 2008 WL 1927372 (E.D.N.Y. May 1, 2008), "[e]ach of [the] courts found that the 'best evidence rule,' Fed. R. Evid. 1002, was 'applicable' to motion to suppress proceedings." Nov. 25, 2020 Suppl., ECF No. 451. However, the courts in the cited decisions do not hold that the best evidence rule applies during a motion to suppress hearing. In *Hamidullin*, the district court uses the best evidence rule to justify its reliance on the use of a recording instead of a transcript based on the recording. 114 F. Supp. 3d at 390 n.1. In *Beeler*, the

11

the Court could consider the officer's testimony even if the Defendant raised a best evidence objection.

Finally, even if the best evidence rule were invoked, it would not apply to Officer Shultz's testimony. Rule 1002 provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. However, "[i]f a witness's testimony is based on his first-hand knowledge of an event as opposed to his knowledge of the document, . . . then Rule 1002 does not apply." *Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 648–49 (7th Cir. 2006); *see also* 31 Fed. Prac. & Proc. Evid. § 7183 (1st ed.). Furthermore, "an event may be proved by nondocumentary evidence, even though a written record of it was made." *Fultz v. Indiana*, No. 3:19-CV-557, 2020 WL 6747729, at *2 (N.D. Ind. Nov. 17, 2020) (quoting Fed. R. Evid. 1002 Advisory Committee Notes). In this instance, Officer Shultz's testimony was not based on a writing, recording, or photograph; rather, it was based on his own first-hand knowledge of what occurred leading up to the traffic stop. Specifically, Officer Shultz testified that he was informed that the Defendant was speeding and that he was instructed to make a traffic stop. Tr. Oct. 29, 2015 Suppression Hr'g 18:15–19:3. He then testified that used his radar to confirm that the Defendant was speeding. *Id.* If, instead, Officer Shultz testified, for example, that he reviewed a police report indicating that on the day in question the Defendant was speeding, then documentary evidence would be required. In this case, however, the best evidence rule is inapplicable.

---

defendant (unsuccessfully) attempted to preclude, based on the best evidence rule, the government from offering into evidence during trial an edited and enhanced copy of a surveillance videotape. 62 F. Supp. 2d at 148–50. In *Codrington*, the defendant (unsuccessfully) attempted to preclude, based on the best evidence rule and the rule of completeness, the government from offering into evidence during trial a surveillance video because certain portions of the video were missing. 2008 WL 1927372, at *12–16. These cases do not support the Defendant's § 2255 motion.

The Defendant's contention that his attorney did not raise a best evidence objection during the suppression hearing appears to be correct. However, even if the Defendant's attorney had presented this objection, it would have been overruled and would not have changed the result of any aspect of the criminal proceeding. Accordingly, the Defendant has not demonstrated that he was prejudiced by his attorney's failure to make a best evidence objection, and his § 2255 Motion is dismissed regarding this argument.

    c.    Failure to Call Witness

The Defendant further argues that his attorney "could have but did not call as a witness, investigate or challenge the unlawful activities of the CHS." § 2255 Mot. ¶ 40 The Defendant further alleges that he was "prejudiced from [these] unprofessional omissions of counsel . . . because, absent said omissions, there is a reasonable probability that the outcome of his pretrial and trial process would have been different." *Id.* at ¶ 43. The Defendant specifies that "but for counsel's failures, evidence would have been presented of the CHS using drugs and dealing drugs on his own during his undercover activities as well as the fact that the CHS was on parole for criminal offense during the time period the police were using him," which would have revealed "the unlawful activities of the government and the CHS" and "would have resulted in dismissal of the charges against [the Defendant] due to outrageous government conduct." *Id.*

"A lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review." *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). Indeed "[t]he Constitution does not oblige counsel to present each and every witness that is suggested to him." *Id.* (quoting *United States v. Balzano*, 916 F.2d 1273, 1294 (7th Cir. 1990)). "To assert a claim that counsel was ineffective for failing to call witnesses at trial, a defendant must make a 'specific, affirmative showing as to what the missing . . . testimony would have been.'" *United States v. Ray*, No. 3:14-CR-78, 2016 WL 8679078, at *1 (N.D. Ind. Dec. 28, 2016) (quoting

13

*United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991)); *see also United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").

Seemingly, the Defendant is arguing that, if the CHS had been called at trial, he would have testified about his engagement in drug use and drug trafficking and that he was on parole during his involvement in this case. However, the Defendant does not specify what the CHS's testimony would have been if he were called at trial and has not provided anything to demonstrate the veracity of his claims that the CHS engaged in misconduct. Moreover, the Defendant does not explain (or provide any case law demonstrating) how this testimony would have resulted in a different outcome at trial or dismissal of the charges against him.[3] Instead, the Defendant merely provides the baseless contention that the CHS's testimony would show that he engaged in misconduct and would (somehow) result in the dismissal of the Defendant's criminal charges. These bare allegations are insufficient to sustain the Defendant's ineffective assistance claim.

Additionally, the Defendant argues that he was prejudiced because his attorney failed to investigate or challenge the CHS's misconduct. The Defendant, however, does not specify what his attorney should have done to investigate or challenge the alleges misconduct. Such general allegations are insufficient to sustain the Defendant's claim. *Redd*, 2007 WL 1724900, at *8

---

[3] The Court recognizes that the Defendant may be arguing that the alleged governmental misconduct—specifically, the CHS engaging in drug use and drug trafficking and the Government using the CHS despite the CHS being on parole—warranted dismissal of the criminal charges against him. The Seventh Circuit has expressed skepticism about the validity of a defense based on the outrageous conduct of the government; however, such a defense is theoretically possible. *See United States v. Smith*, 792 F.3d 760, 764–65 (7th Cir. 2015). In this instance, the Defendant has failed to demonstrate the necessity of its invocation as he has failed to provide any explanation detailing how the alleged misconduct impacted his constitutional rights or his criminal proceedings.

("Bald allegations of prejudice are insufficient to demonstrate ineffective assistance of counsel." (citing *Barkauskas*, 946 F.2d at 1295)).

Based on the above, the Defendant has not demonstrated that he was prejudiced by his attorney's failure to call, investigate, or challenge the use of the CHS, and his § 2255 Motion is dismissed regarding this argument.

d.       Failure to Advise Defendant on Right to Testify

Next, the Defendant argues that his attorney "could have but did not fully advise [him] that he had a constitutional right to testify in his trial process," that his attorney "could have but did not advise [him] in a way that he could understand, that he had the ultimate authority to decide whether to take the stand and testify; that is that only [he] could waive his constitutional right to testify in the trial process," and that his attorney "could have but did not advise [him], in a way that he could understand that he had a constitutional right to testify in the trial process even if counsel advised and believed that such testimony would be inadvisable from counsel's viewpoint." § 2255 Mot. ¶¶ 47–49.

It is well established that "[a] criminal defendant has a constitutional right to testify in his own behalf." *Underwood v. Clark*, 939 F.2d 473, 475 (7th Cir. 1991) (citing *Rock v. Arkansas*, 483 U.S. 44, 51–53 (1987)). However, "[i]t is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, 'My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial.'" *Id.* For this reason, the Seventh Circuit has instructed that, although "[t]he defendant need not protest and the judge need not question him, but in a subsequent collateral attack on the conviction the defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand." *Id.* at 476. For example, a

15

defendant could provide an affidavit from his attorney indicating that they prevented the defendant from testifying. *Id.* In this case, the Defendant has not produced anything beyond his own bare, unsubstantiated, self-serving statements.[4] For these reasons, the Defendant's § 2255 Motion is dismissed regarding this argument.

     e.     Cumulative Effect of Deficiencies

The Defendant also argues that the cumulative effect of his attorney's omissions and errors prejudiced him. In addition to reiterating his previous arguments, the Defendant's final argument asserts several new claims. Specifically, he argues that his attorney did not investigate or present exculpatory evidence and failed to object to the unlawful admission of evidence by the prosecution, failed to timely request appropriate jury instructions and to timely object to improper jury instructions, failed to object to the prosecution's final argument and request curative instructions for the improper argument, failed to investigate or present available evidence and legal authority related to the Defendant's sentencing and failed to object to unlawful, false, and unreliable evidence used to determine the Defendant's guideline range and ultimate sentence, failed to present the strongest issues on direct appeal, and represented him despite the existence of an actual conflict of interest. § 2255 Mot. ¶¶ 60–69.[5]

---

[4] The Court notes that at the May 18, 2017 In-Person Hearing, the Defendant's attorney represented that he reviewed the Government's offered Plea Agreement [ECF No. 233] with the Defendant and explained that "the last proposed plea agreement had been shared early, discussed with [the Defendant]," and that "[d]etails that have been presented to him in writing at every stage, at every step and we received those offers and accompanying a cover letter by counsel, as well as face-to-face discussions with [the Defendant] to go over these proposed terms, allowing him to see and hear and ask questions of counsel at each step." Tr. May 18, 2017 In-Person Hr'g 12:20–13:1, ECF No. 304. The Plea Agreement [ECF No. 233] offered by the Government provides that "[a]t trial . . . [i]f I desired to do so, I could testify on my own behalf." Plea Agreement ¶ 5e, ECF No. 233. Although the Court does not consider these representations and the Plea Agreement in its analysis, they do suggest that the Defendant was instructed on his right not testify during trial.

[5] The Defendant also argues that he was prejudiced because his attorney did not "move for dismissal of the indictment on the basis that it was not presented or returned by the grand jury in open court." § 2255 Mot. ¶ 61. However, in the cases he cites in support of this argument, *United States v. Lennick* and *United States v. Thompson*, neither court ruled that dismissal of the indictment was appropriate based on a

Regarding the Defendant's reiterated arguments, the Court has already determined that the Defendant has failed to demonstrate any prejudice suffered as a result of the legal representation he received. Regarding the Defendant's new arguments, the Defendant makes only general allegations, which are insufficient to sustain an ineffective assistance of counsel claim. *Redd*, 2007 WL 1724900, at *8 (N.D. Ind. June 11, 2007). Even when considering the totality of the alleged conduct, the Court's analysis and conclusions are unchanged.[6] Accordingly, the Defendant's § 2255 Motion is dismissed regarding this argument.

f.    Miscellaneous Arguments

Finally, the Defendant argues generally that his "conviction and sentence are violative of his right to freedom of speech and to keep and bear arms and to petition, his right to be free of unreasonable search and seizure, his right to due process of law, his rights to counsel, to jury trial, to confrontation of witnesses, to present a defense, and to compulsory process, and his right to be free of cruel and unusual punishment under the constitution." § 2255 Mot. p. 10 (Ground Six). The Defendant, however, identifies no conduct on which these allegations are based and

---

violation of Rule 6(f) of the Federal Rules of Criminal Procedure. 18 F.3d 814, 817–818 (9th Cir. 1994); 287 F.3d 1244, 1250–51 (10th Cir. 2002). Indeed, the Defendant ignores the court's explanation in *Lennick* that "errors in the grand jury indictment procedure are subject to harmless error analysis unless 'the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair.'" *Lennick*, 18 F.3d at 817 (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254–57 (1988)). Even if the Defendant's contention that the Court did not comply with Rule 6(f) were true, his attorney's motion for dismissal would be baseless unless the lack of compliance rendered the proceedings fundamentally unfair. *See id.* The Defendant has failed to provide anything that would support a motion for dismissal based on Rule 6(f); therefore, the Court concludes that the Defendant was not prejudiced by the fact that his attorney did not file such a motion.

[6] The Court notes that the Defendant submitted a supplement in support of his § 2255 motion arguing that his attorney "should have but did not cite [*Rodriguez v. United States*, 575 U.S. 348 (2015)]." Apr. 28, 2021 Suppl., ECF No. 478. However, the Defendant's attorney did cite *Rodriguez*. In the Defendant's Motion to Suppress Evidence, the Defendant argued that "[t]he Indiana State Police trooper thereafter prolonged the traffic stop beyond the time reasonably required to complete the task of issuing a traffic citation in order to conduct an additional search of Defendant's vehicle, in violation of the Fourth Amendment as set forth in *Rodriguez v. U.S.*, 135 S.Ct. 1609 (2015)." Def.'s Mot. to Suppress Evid. ¶ 4, ECF No. 75. Again, the Defendant's filing mischaracterizes his attorney's conduct and, thus, does not support the Defendant's § 2255 motion.

makes no attempt to explain how his conviction and/or sentence otherwise violates the First, Second, Fourth, Fifth, Sixth, or Eighth Amendment. These broad, unsupported claims do not warrant relief under § 2255; therefore, the Defendant's § 2255 Motion is dismissed regarding this argument

**B.    Motion for Return of Property**

In his Motion for Return of Property [ECF No. 401], the Defendant represents that "$9,300 in US currency [was] seized when he was arrested and subsequently held by the US Marshal service," that he "has no knowledge that any legal proceedings were ever concluded to forfeit the foregoing described property," and that "[t]he property is not the proceeds of unlawful activity." Mot. for Return of Property ¶¶ 1, 3, 7, ECF No. 401. Additionally, the Defendant requests that the Court order that the property be returned. *Id.* at ¶ 10. On June 1, 2017, the Court issued a Sentencing Scheduling Order, which instructed that

> [b]y August 10, 2017, the Government must file a Notice advising as to the status of any forfeiture proceedings, including whether the Defendant agreed to forfeit the property at issue in a plea agreement, whether criminal forfeiture is still being sought as part of the sentence and judgment or whether, instead, the Government is pursuing civil or administrative forfeiture; the date of any preliminary order of forfeiture; and the status of any third party claims to interest in the property.

June 1, 2017 Order, ECF No. 252. On August 10, 2017, the Government filed a Notice of Forfeiture indicating that "all items of forfeiture have been administratively forfeited." Notice, ECF No. 272. Nothing before the Court demonstrates—or even suggests—that the Government's representation that the money has been administratively forfeited is inaccurate.

The Court's jurisdiction over matters related to administrative forfeiture is limited. Indeed, the Court is limited to determining whether the Government's notice procedures complied with due process. *See Martov v. United States*, 926 F.3d 906, 908–09 (7th Cir. 2019) (citing *Chairez v. United States*, 355 F.3d 1099, 1101 (7th Cir. 2004)). The Defendant does not

argue and provides nothing to demonstrate that the Government did not provide notice of the administrative forfeiture or that its notice procedure did not comply with due process. Accordingly, the Defendant has not offered any valid basis upon which relief may be granted, *see id.* (citing *Chairez*, 355 F.3d at 1101), and his Motion for Return of Property [ECF No. 401] is denied.

## NO CERTIFICATE OF APPEALABILITY

The Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, 893 n.4 (1983)). The Court finds that the Defendant has failed to show that reasonable jurists could debate whether his Motion presents a viable ground for relief. Therefore, the Court will not issue the Defendant a certificate of appealability.

## CONCLUSION

For the reasons stated above, the Court DISMISSES the Defendant's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 [ECF No. 399] and DENIES his Motion for Return of Property [ECF No. 401]. Further, the Court DENIES a Certificate of Appealability.

SO ORDERED on September 15, 2021.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT